IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01350-CMA-KLM

SEELEY INTERNATIONAL PTY LTD,

     Plaintiff,

v.

VALERIY MAISOTSENKO,
M-CYCLE INDUSTRIES, INC., and
M-CYCLE CORPORATION, LTD,

     Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Strike or Amend Plaintiff's Patent Infringement Contentions** [#57] (the "Motion").   Plaintiff filed a Response [#60] in opposition to the Motion [#57].[1]   No reply was filed.   The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises.   For the reasons set forth below, the Motion [#57] is **DENIED without prejudice in part**, **DENIED in part**, and **GRANTED in part**.

### I.   Background

According to the Amended Complaint [#36], this case arises from Defendants'

---

[1]   In the future, Plaintiff should **carefully** check the formatting of briefs before submitting them to the Court.   *See, e.g., Response* [#60] at 2 (centering the latter half of paragraph 5 with the heading of the next section tacked onto the end of paragraph 5), 3 (providing a lengthy single-spaced paragraph of information after the "A." heading and placing the title of the "A." heading in bold at the end of that paragraph).   Sloppiness causes unnecessary delays.

alleged "ongoing breach of contract, misappropriation of trade secrets, and patent infringement that continue to cause [Plaintiff] irreparable harm to its goodwill, market position, and reputation in the heating, ventilation, and air conditioning ("HVAC") industry." *Am. Compl.* [#36] ¶ 7.   Plaintiff seeks injunctive relief and monetary damages.   *Id.* at 8.

Plaintiff "is an air conditioning and gas heating manufacturer servicing commercial, industrial, and residential markets across the globe" and "is a world leader in the air-cooling industry aiming to create highly innovative and energy-efficient climate control solutions."   *Id.* ¶ 9.   Defendant Valeriy Maisotsenko ("Maisotsenko") "is the credited inventor of a revolutionary air-cooling methodology and technology known in the HVAC industry as the M-Cycle," which "uses thermodynamics and psychrometric renewable energy to achieve cooler air faster and more efficiently than a traditional air cooler."   *Id.* ¶ 10.   In short, the "M-Cycle is based on an air-cooling method known as indirect evaporative cooling," which "occurs by injecting water onto the exterior or interior walls of a heat exchanger."   *Id.*   "The heat exchanger evaporates the water which imparts a cooling effect to the opposite side of the walls," and the "chilled surface of the heat exchanger wall then cools passing airflow."   *Id.*   "[T]he M-Cycle represents a proprietary, scientific method for an air cooler to produce colder product air more efficiently than a traditional indirect evaporative cooler."   *Id.* ¶ 12.

According to Plaintiff, the M-Cycle patents were purchased by Coolerado Corporation in 2010, *id.* ¶ 13, and then Plaintiff purchased the M-Cycle patents in 2015, *id.* ¶ 15.   The latter purchase agreement "incorporated a list of patents Coolerado sold to [Plaintiff] which comprise the integral features and methodology of the M-Cycle."   *Id.* ¶

16.   Plaintiff states that "the following [fifteen] patents owned by [Plaintiff] . . . capture and protect the technology, methodology, and inventions that comprise the M-Cycle": (1) WO 02/027254 A3 – Application No. AU 2001294882 B2; (2) WO 03/49844 – Application No. AU 2002346722 B2; (3) WO 05/080881 – Application No. 2005215644 B2; (4) CA 2469648 C – Application No. US 2002/039808; (5) CA 2554512 C – Application No US 2005/005441; (6) EP 1334325 B1 – International Application No. PCT/US2001/030468; (7) EP 1465721 B1 – International Application No. PCT/US2002/039808; (8) EP 1716369 B1 – Application No. 5713879.4; (9) US 6497107 B2 – Application No. 09/916800; (10) US 6581402 B2 – Application No. 09/966928; (11) US 6705096 B2 – Application No. 10/316775; (12) US 6776001 B2 – Application No. 10/203195; (13) US 7197887 B2 – Application No. 10/397901; (14) US 7228699 B2 – Application No. 11/061124; and (15) WO 2005/080881 A1 – Application No. PCT/US2005/005441.   *Id.*   Plaintiff collectively refers to these as the "Patents" for purposes of the Amended Complaint [#36].   *Id.*

Defendant Maisotsenko signed a Non-Competition and Non-Solicitation Agreement with various other parties and non-parties, including Plaintiff, with respect to the M-Cycle.   *Id.* ¶ 17.   However, in short, Plaintiff alleges that Defendant Maisotsenko later "began directly competing with [Plaintiff] by developing and manufacturing indirect evaporative coolers that implement the M-Cycle, the technology protected by the Patents," and that Defendant Maisotsenko "has used his knowledge of [Plaintiff's] patented technology, trade secrets, and intellectual property regarding the M-Cycle to form the businesses known as M-Cycle Corporation Ltd. and M-Cycle Industries, Inc.," the two corporate Defendants in this case.   *Id.* ¶ 22.   Plaintiff states that "Defendants

–3–

are infringing on the Patents by implementing the protected M-Cycle technology into their products." *Id.* ¶ 23. Allegedly, "[t]hrough his M-Cycle Companies, [Defendant] Maisotsenko is currently and has been manufacturing and selling a competing air cooler called the Gen3 Air Conditioner, which implements the M-Cycle technology protected by the Patents and rightfully owned by [Plaintiff]." *Id*

Plaintiff filed this case on May 17, 2021. *See Compl.* [#1]. In the present Motion [#57], Defendants assert that Plaintiff's Patent Infringement Contentions and Claims Chart should be stricken entirely or amendments should be required because they fail to comply with the Local Patent Rules, namely D.C.COLO.LPtR 4 and 5, and because, with respect to the foreign patents, the Court lacks subject matter jurisdiction.

## II.   Standard of Review

Fed. R. Civ. P. 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint

–4–

as true.  *Id.*   By contrast, with a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.  *Id.* at 1003.   When reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations."  *Id.* at 1003.   The Court therefore must make its own findings of fact.  *Id.*   In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

### III.   Analysis

### A.   Subject Matter Jurisdiction

Defendants argue that the Court does not have jurisdiction over the foreign patents asserted in the Amended Complaint.  *Motion* [#57] at 9-10.   Before the Court addresses the issue of subject matter jurisdiction, a little background on the foreign patents in this case is necessary.

Plaintiff filed this case on May 17, 2021.  *See Compl.* [#1].   In its Complaint, Plaintiff referred to a specific section of an Asset Purchase ("AP") Agreement between itself and a non-party, Coolerado Corporation, stating that: "the AP Agreement incorporated a list of patents Coolerado sold to [Plaintiff] which comprise the integral features and methodology of the M-Cycle (the "Patents").   The Patents are attached to the AP Agreement as Exhibit 4.9.   The bulk of the numerous Patents acquired by [Plaintiff] are still in full force and effect as of the date of this filing."  *Compl.* [#1] ¶ 16.

On August 3, 2021, Plaintiff filed an Amended Complaint [#36], which is currently

the operative complaint.   In its Response [#60] here, Plaintiff points to amended paragraph 16 as alleging that foreign patents are included in the claims of this case. *Response* [#60] at 6.   That amended paragraph states: "Moreover, the AP Agreement incorporated a list of patents Coolerado sold to [Plaintiff] which comprise the integral features and methodology of the M-Cycle.   Specifically, the following patents owned by [Plaintiff] are included in the AP Agreement and capture and protect the technology, methodology, and inventions that comprise the M-Cycle (collectively referred to herein as the "Patents") . . . ."   *Am. Compl.* [#36] ¶ 16.   The paragraph then lists four World Intellectual Property Organization patents, two Canadian patents, three European Patent Office patents, and six United States patents.   *Id.*

According to Defendants, "[d]uring negotiations over the Rule 26 Statement (adopted as Doc. #45), Defendants asked that the foreign patents listed, in a manner (Docs. #2 and 5) filed with the Complaint be deleted from Plaintiff's draft of the Statement because this court lacks subject matter jurisdiction over foreign patents.   Plaintiff did so." *Motion* [#57] at 9.   Plaintiff responds that:

> Defendants mischaracterize the exchange as it relates to the Rule 26 "negotiations" and misrepresent [Plaintiff's] position.   On September 1, 2021, [Plaintiff's] counsel sent Defendant's counsel a draft Joint Scheduling Order, which included proposed dates and [Plaintiff's] statements, leaving the corresponding portions for the Defendants blank.   In this draft, [Plaintiff] included a statement in the Undisputed Facts section that [Plaintiff] was the rightful owner of all Patents listed in Seeley's First Amended Complaint [and] that [Plaintiff] claimed the Defendants were infringing on the Patents, including the Foreign Patents.   Defendants' counsel returned edits to the draft that deleted the foreign patents from the undisputed facts.   *See* Exhibit A, Annex 2.   Upon returning the draft, Defendants' counsel stated that [Plaintiff] and Defendants were "not on same page on undisputed facts and are not going to agree to all the extraneous stuff you have in this document. Either your client has the patents or it does not.   The foreign patents,

nobody cares. etc.". *See* Exhibit A, Annex 3.   Counsel for Defendants removed the references to the Foreign Patents from the Undisputed Facts section, and counsel for all parties agreed to a draft.   By accepting Defendants' edits to the Undisputed Facts section, [Plaintiff] in no way represented that it was no longer bringing claims on the Foreign Patents or was agreeing that the Court lacked subject matter jurisdiction over those claims.   Instead, [Plaintiff] accepted Defendants' edits because a disputed fact should not be included in the Undisputed Facts section of the Joint Scheduling Order.   Defendants' implication that [Plaintiff] somehow released its claims on the Foreign Patents in incredulous.

*Response* [#60] at 7.

In Defendants' Motion to Dismiss [#38] the Amended Complaint [#36], which was filed shortly before the Scheduling Conference was held, Defendants briefly referenced the foreign patents, stating in a parenthetical: "Also, many of the listed patents are clearly foreign.   Non-U.S. patents are not within the jurisdiction of this Court."   *Motion to Dismiss* [#38] at 9.   No citations to legal authority were provided, and no further argument was made.   The Motion to Dismiss [#38] was also explicitly asserted pursuant to Fed. R. Civ. P. 12(b)(6)—no reference was made to Fed. R. Civ. P. 12(b)(1) or the issue of subject matter jurisdiction beyond the one sentence quoted above.   Plaintiff did not reference this argument or the foreign patents directly in its Response [#50] to the Motion to Dismiss [#38], and the District Judge did not address Defendants' perfunctory statement in her Order Denying Motion to Dismiss [#63].

In the present Motion [#57], Defendants state that "it has not been clear until the Contentions that Plaintiff actually intended [the foreign patents] be part of this action." *Motion* [#57] at 9 n.5.   Defendants assert that the Amended Complaint [#36] "fails to specify any statute or rule which gives this court subject matter jurisdiction over foreign patents."   *Id.* at 9.   They state that "[a]llegations of infringement of foreign patents are

not subject to Title 35 of the U.S. Code."   *Id.*

Plaintiff responds that this "Motion to Strike is not the appropriate vehicle to raise Defendants' apparent issue with the foreign patents identified in Plaintiff's First Amended Petition . . . or this Court's subject matter jurisdiction.   Should Defendants file a Fed. R. Civ. P. 12(b)(1) motion, [Plaintiff] will respond and fully brief the alleged issue(s) accordingly."   *Response* [#60] at 6.   Nevertheless, Plaintiff proceeds to briefly address Defendants' argument by stating:

> To the extent the Court entertains Defendants' improper subject-matter jurisdiction argument, the Court has supplemental jurisdiction over the Foreign Patents.   Defendants contend in the Motion that this court does not have jurisdiction over Foreign Patents because it claims [Plaintiff's] First Amended Complaint does not set forth the statutory basis that provides the court with subject matter jurisdiction to consider the Foreign Patents.   [Doc 57];[Doc 36, ¶4].   In the First Amended Complaint, [Plaintiff] specifically alleges facts to support and establish supplemental subject matter jurisdiction over the Foreign Patents.   [Doc 36, ¶16].   28 U.S.C. § 1367(a) expressly provides for supplemental jurisdiction to "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."   28 U.S.C. § 1367(a).   As [Plaintiff] expressly stated in [its] First Amended Complaint, the Foreign Patents all comprise various essential components of the technology known as the M-Cycle.   This court has supplemental jurisdiction over the Foreign Patents, because the Foreign Patents protect the same or a portion of the technology, methodology, or invention also protected by Patents registered in the United States.   As such, [Plaintiff's] First Amended Complaint contains sufficient allegations to show the Court's supplemental jurisdiction over the foreign patents.

*Response* [#60] at 6.

In short, Plaintiff argues that the Court has supplemental jurisdiction over the foreign patents pursuant to 28 U.S.C. § 1367(a).   *Id.*   Citing *Voda v. Cordis Corp.*, 476 F.3d 887 (Fed. Cir. 2007), Defendants argue that an exception to § 1367(a) found in § 1367(c) applies here.   *Motion* [#57] at 10.   "A proper exercise of subject matter

jurisdiction pursuant to § 1367 requires both the presence of jurisdiction under subsection (a) and an appropriate decision to exercise that jurisdiction under subsection (c)." *Voda*, 476 F.3d at 891.

The Court generally agrees with Plaintiff that asserting a motion to dismiss on the basis of subject matter jurisdiction in what is essentially a discovery motion seeking to strike infringement contentions is inappropriate. The legal briefing here regarding the Court's jurisdiction over foreign patents is woefully inadequate with respect to legal authority, analysis, and pin cites to the docket. To the extent that the Court may have supplemental jurisdiction under § 1367(a), the Court must find that the "claims of foreign patent infringement 'form part of the same case or controversy under Article III.'" *Voda*, 476 F.3d at 894. Here, Plaintiff merely provides a generalized citation to the Amended Complaint [#36] to say that "the Foreign Patents protect the same or a portion of the technology, methodology, or invention also protected by Patents registered in the United States." *Response* [#60] at 6. This vague assertion is not enough to meet the analytical requirements expressed by *Voda*. Further, Plaintiff's Response [#60] does not even reference § 1367(c), the exception to § 1367(a), although Defendants had pointed to this subsection in their Motion [#57].

Even though Defendants mention § 1367(c) as barring supplemental jurisdiction, Defendants' Motion [#57] analytically fares no better than Plaintiff's Response [#60]. Although Defendants provide a brief recitation of some of *Voda*'s holdings, there is no discussion whatsoever of the factors *Voda* indicates must be examined by the Court in determining whether it may exercise supplemental jurisdiction over foreign patents.

–9–

*Motion* [#57] at 10.   In fact, *Voda* explicitly states: "[W]e emphasize that because the exercise of supplemental jurisdiction under § 1367(c) is an area of discretion, the district courts should examine these reasons along with others that are relevant *in every case* . . . ."   *Voda*, 476 F.3d at 905 (emphasis added).   In other words, *Voda* did not create a blanket, bright-line rule that supplemental jurisdiction may not be exercised over foreign patents.

In short, the parties present an issue to the Court but do not provide any of the requisite analysis to allow the Court to reach a ruling on that issue.   Nevertheless, the Court must satisfy itself of subject matter jurisdiction at all stages of litigation.   *See* Fed. R. Civ. P. 12(h)(3); *see also Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x 62, 67 (10th Cir. 2005) ("[I]t has long been recognized that a federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceeding."). Here, based on the limited information provided in the briefs and its reading of *Voda*, the Court has grave concerns over whether the exercise of jurisdiction over the foreign patents is appropriate.

Accordingly, based on the inappropriateness of including a motion to dismiss in a motion to strike and the inadequacy of the briefs, the Motion [#57] is **DENIED without prejudice**.   The deadline for Defendants to file a motion pursuant to Fed. R. Civ. P. 12(b)(1) regarding the Court's jurisdiction over the foreign patents is **September 21, 2022**.

## B.    D.C.COLO.LPtR 5

D.C.COLO.LPtR 5, regarding document production accompanying infringement

contentions, provides:

> Contemporaneously with service of the Infringement Contentions, the party claiming patent infringement shall produce to each party (or make available for inspection and copying) the following documents and identify by production number which documents correspond to each category:
>
> (a)     All documents demonstrating each disclosure, sale (or offer to sell), or any public use of the claimed invention before the application date or the priority date (whichever is earlier) for each patent in suit;
>
> (b)     All documents created on or before the application date or the priority date (whichever is earlier) for each patent in suit that demonstrate each claimed invention's conception and earliest reduction to practice;
>
> (c)     A copy of the patent(s) in suit and all communications with the United States Patent and Trademark Office regarding the patent(s) in suit and any related application(s); and
>
> [(d)]    All documents demonstrating ownership of the patent rights by the party claiming patent infringement.

Here, Defendants state that "[t]he massive Contentions (756 pages) contain copies of all the U.S. patents noted above, copies of the foreign patents and miscellaneous documents, none of which provide any information or key as to where any claim element in any of the asserted patents can be found in any of Defendants' accused products." *Motion* [#57] at 4 (footnote omitted).   Defendants concede, however, that "[t]he Contentions comply somewhat with LPT 5.   They include portions of the Asset Purchase Agreement . . . to which further pages have been inserted, and as apparent factual support for all the claim contentions, reproduce screen shots taken from You-Tube videos which Defendant M-Cycle has linked at its website, and reproduce some of the websites used as exhibits in the Complaint and Amended Complaint."   *Id.* at 4 n.2.   Defendants assert though, that "there is none of the cause and effect correlation required."   *Id.* (citing

–11–

*Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008)).   The Court notes that the portion of the *Linex* case here cited by Defendants concerns what must go in a claims chart, not what types of documents must be produced, and therefore appears to be inapposite.

Plaintiff responds:

> . . . [Plaintiff] has produced documents consecutively Bates-labeled as SEELEY 00001 – SEELEY 00716.   In doing so, [Plaintiff] produced all documentation and information required per Local Patent Rule 5 currently in its possession, including the complete patents listed in the [Infringement Contentions] and [Claims Chart] . . . , documents showing [Plaintiff's] ownership of the subject Patents, and videos and photographs of Defendants' actual infringement of the Patents.   *See* Exhibit A, Annex 1. Specifically, [Plaintiff] supported its [Infringement Contentions] and [Claims Chart] with documents and videos showing the Defendants' infringement on [Plaintiff's] Patents including making, manufacturing, designing, using, distributing, and marketing the Accused Instrumentalities.   *Id.*   Moreover, while [Plaintiff] has requested a physical inspection of the Accused Instrumentalities, Defendants have refused to present such products for inspection.   In fact, Defendants are actively attempting to thwart [Plaintiff's] attempts to gather relevant information by requesting a stay of discovery in their Motion.   Importantly, to the best of [Plaintiff's] knowledge, the Accused Instrumentalities are not publicly available for purchase, and the only way [Plaintiff] may adequately inspect the Accused Instrumentalities is through the formal discovery process.   After discovery progresses and [Plaintiff] is able to conduct a physical inspection of the Accused Instrumentality, [Plaintiff] anticipates that it may have additional documents to produce and information to include in its Final Infringement Contentions or any amendments or supplements to its [Infringement Contentions] and [Claims Chart], pursuant to Local Patent Rule 16(a)(3).

*Response* [#60] at 4.

There is a dearth of case law in the District of Colorado regarding D.C.COLO.LPtR 5; in fact, the Court has found no written opinions citing this Local Rule.   Nevertheless, based on the language of the rule itself and on the information provided in the briefs, the Court cannot find that the requirements of D.C.COLO.LPtR 5 have not been met, for the

following reasons.

First, Defendants have not pointed to any specific subsection of this Local Rule to argue that the documents required by (a), (b), (c), or (d) have not been provided.   In other words, the Motion [#57] is not specific enough for the Court to understand precisely which types of documents Defendants are seeking here.

Second, although not necessarily required in every instance in ruling on a motion under this Local Patent Rule, Defendants have, with very limited exception, not provided copies of the documents, or a sufficient sampling of the documents, which Plaintiff *has* produced, in order to allow the Court to see whether D.C.COLO.LPtR 5 has been complied with.

Third, Plaintiff's counsel, as an officer of the Court, has affirmatively stated that Plaintiff has "produced *all* documentation and information required by Local Patent Rule 5 currently in its possession . . . ."   *Response* [#60] at 4.   Defendants did not file a Reply to contest this assertion.

Finally, based on the limited information provided by the parties, it appears that Plaintiff has, at a minimum, substantially complied with the requirements of D.C.COLO.LPtR 5, given that Plaintiff has purportedly provided "the complete patents listed in the [Infringement Contents] and [Claims Charts] . . . , documents showing [Plaintiff's] ownership of the subject Patents, and videos and photographs of Defendants' actual infringement of the Patents."   *Id.* (citing *Pl.'s Ex. A, Decl. of William Dunne* [#60-1]; *Pl.'s Annex 1, Pl.'s Initial Disclosure of Asserted Claims and Infringement Contentions* [#60-2]).   Plaintiff further states that it "supported its [Infringement Contents] and [Claims

Charts] with documents and videos showing the Defendants' infringement on [Plaintiff's] Patents including making, manufacturing, designing, using, distributing, and marketing the Accused Instrumentalities." *Id.*  While the Court cannot not hold, based on the limited information before it, that Plaintiff *has* fully complied with the requirements of D.C.COLO.LPtR 5, the Court finds that Defendants have not shown that those requirements have not been met.

Accordingly, the Motion [#57] is **denied without prejudice** to the extent asserted under D.C.COLO.LPtR 5.[2]

## C.     D.C.COLO.LPtR 4

D.C.COLO.LPtR 4, regarding the disclosure of asserted claims and infringement contentions, provides:

(a)     Infringement Contentions. By the date specified in the Patent Scheduling Order, a party claiming patent infringement shall serve Infringement Contentions identifying with specificity each accused product or process (the "Accused Instrumentality").

(b)     Claim Chart.  A party who serves Infringement Contentions also shall serve a claim chart for each Accused Instrumentality.   If two or more Accused Instrumentalities have the same relevant characteristics, they may be grouped together in one claim chart.   The claim chart(s) shall be specific and shall contain the following information:

(1)     Identification of each claim of each patent in suit that is allegedly infringed by the Accused Instrumentality;

(2)     Identification of the specific location of each limitation of the

---

[2] Plaintiff essentially concedes "that it may have additional documents to produce and information to include in its Final Infringement Contentions or any amendments or supplements to its [Infringement Contentions] and [Claims Chart], pursuant to Local Patent Rule 16(a)(3)," "[a]fter discovery progresses and [Plaintiff] is able to conduct a physical inspection of the Accused Instrumentality."  *Response* [#60] 4.   However, there is no indication from either party in the present briefing as to what those documents may consist of.

claim within each Accused Instrumentality, including for each limitation that the party contends is governed by 35 U.S.C. §112(f), the identity of the structures, acts, or materials in the Accused Instrumentality that perform the claimed function;

(3)    A statement of whether each limitation of each asserted claim is literally present in the Accused Instrumentality or present under the doctrine of equivalents; and

(4)    If an allegation of direct infringement is based on acts of multiple parties, a description of the role of each such party in the direct infringement.

The scant written case law in the District of Colorado regarding the requirements of D.C.COLO.LPtR 4 is only slightly better developed than case law regarding D.C.COLO.LPtR 5, with most citations to Local Patent Rule 4 concerning scheduling and/or the general discovery process in patent cases.   The two exceptions appear to be *Arason Enterprises, Inc. v. CabinetBed Inc.*, No. 16-cv-03001-PAB-NRN, 2019 WL 7049989 (D. Colo. Dec. 23, 2019), and *Fiber, LLC v. Ciena Communications, Inc.*, No. 13-cv-00840-PAB-KLM, 2016 WL 11697061 (D. Colo. Aug. 10, 2016).   The relevant portion of *Fiber*, however, concerned only *who* must comply with the Local Patent Rules, including the requirements of D.C.COLO.LPtR 4.   *See Fiber, LLC*, 2016 WL 11697061, at *1-2.   In *Arason*, a straight-forward application of Local Patent Rule 4 mandated that the plaintiff's infringement contentions regarding "Premium Beds" must be stricken when "Premium Beds" were not included at all in the plaintiff's claim chart, only "Standard Beds." *Arason*, 2019 WL 7049989, at *5-6.   Thus, neither *Fiber* nor *Arason* provide guidance regarding the application of this rule under the circumstances of the present case. Nevertheless, as explained below, the Court has no trouble based on the plain language of this rule in finding that Plaintiff's Claims Chart must be amended.

–15–

Here, Defendants argue that Plaintiff has not complied with subparts (b)(2)-(4). *Motion* [#57] at 7.   They assert that "[t]he Contentions do not provide a meaningful claims chart for any patent listed.   They just repeat similar, uninformative boilerplate paragraphs asserting that claims are infringed without stating how there is infringement."   *Id.* at 5 (citing *Defs.' Ex. A, Pl.'s Initial Disclosure of Asserted Claims and Infringement Contentions* [#57-1]).   Defendants refer only to a single exemplary page of the Claims Chart to support their argument, and Plaintiff does not contest that this example is inappropriate or does not adequately represent any problems (or lack thereof) in the Claims Chart.   Accordingly, the Court also focuses on U.S. Patent No. 6,497,107 in its analysis below.   *See Pl.'s Claim Charts* [#60-2] at 10-11; *Pl.'s Ex. B* [#57-2] at 2-3.

Regarding D.C.COLO.LPtR 4(3), Plaintiff is required to provide a specific statement "of whether each limitation of each asserted claim is literally present in the Accused Instrumentality or present under the doctrine of equivalents."   In the Claims Chart, Plaintiff states: "Each limitation of each Asserted Claim is literally present in the Accused Instrumentality.   [Plaintiff] reserves the right to assert additional or different theories of infringement, including infringement under the doctrine of equivalents."   *See* [#60-2] at 10.   Plaintiff's statement appears to conform to the requirements of this subsection of the rule, and Defendants have not adequately explained otherwise.   Thus, the Court **denies** the Motion [#57] to the extent it is asserted under D.C.COLO.LPtR 4(3).

Regarding D.C.COLO.LPtR 4(4), Plaintiff is required to provide a specific "description of the role of each such party in the direct infringement" to the extent that "an allegation of direct infringement is based on acts of multiple parties."   In the Claims Chart,

Plaintiff states:

> Defendant Valeriy Maisotsenko ("Maisotsenko") was employed by [Plaintiff]
> from 2015 through 2018 as its Chief Scientist. Immediately after his
> employment ended with [Plaintiff], Maisotsenko began directly competing
> with [Plaintiff] by developing and manufacturing indirect evaporative
> coolers that implement the technology, methodology, inventions, and know-how
> protected by the Asserted Claims [in] the above referenced patent.
> Maisotsenko has used his knowledge of [Plaintiff's] patented technology,
> methodology, inventions, and know-how to form the businesses known as
> M-Cycle Corporation Ltd. and M-Cycle Industries, Inc. (the "M-Cycle
> Companies"), named Defendants in this matter.  Through the M-Cycle
> Companies, Defendants are infringing on the Patents by implementing the
> protected M-Cycle technology into their products, including the Gen3 Air
> Conditioner.  Defendants blatantly claim [Plaintiff's] patented technology
> as their own on Defendants' websites and boast about using the technology,
> methodology, inventions, and know-how protected by the above referenced
> patent in their products.  Defendants are currently and have been
> manufacturing and selling the Gen3 Air Conditioner and previous
> generations of the product, which implements the technology, methodology,
> inventions, and know-how protected by the Asserted Claims [in] the above
> referenced patent.

*See* [#60-2] at 11.   Defendants argue that this statement "includes, among other things not actionable as infringement, Defendant Maisotsenko's employment, his alleged competing after employment, his forming the Defendant businesses, and their 'boasting,' and 'blatantly claiming,' superior products . . . ."  *Motion* [#57] at 7.  Plaintiff merely responds that it has provided "a description of each Party's specific role in direct infringement . . . ."  *Response* [#60] at 5.

The basis of Defendants' argument here appears to be that Plaintiff has provided *too* much information, i.e., information beyond what this subpart of the local rule requires. Defendants do not point to any information that *should* be included in the statement in order to satisfy the requirements of this portion of the Local Patent Rule.   Given the lack of any argument on this point and the lack of any legal authority provided by Defendants

or found by the Court that Plaintiff must be ordered to *remove* information, and based on the Court's reading of the rule and Plaintiff's related statement, the Court finds that Plaintiff's statement appears to conform to the requirements of this subsection of the rule. Thus, the Court **denies** the Motion [#57] to the extent it is asserted under D.C.COLO.LPtR 4(4).

Regarding D.C.COLO.LPtR 4(2), Plaintiff is required to provide a specific statement as follows: "[i]dentification of the specific location of each limitation of the claim within each Accused Instrumentality, including for each limitation that the party contends is governed by 35 U.S.C. §112(f), the identity of the structures, acts, or materials in the Accused Instrumentality that perform the claimed function."   In the Claims Chart, Plaintiff states:

> The technology, methodology, inventions, and know-how protected by the Asserted Claims of the above referenced patent capture improvements on the indirect evaporative cooling method and apparatus by making use of a working fluid that is pre-cooled with and without desiccants before it is passed through a we [sic] channel where evaporative fluid is on the walls to take heat and store it in the working fluid as increased latent heat.   The heat transfer across the membrane between the dry channel and the wet channel may have dry, solid desiccant or liquid desiccant and may have perforations, pores or capillary pathways.   The evaporative fluid may be water, fuel, or any substance that has the capacity to take heat as latent heat.   The wet channel or excess cooled fluid is in heat transfer contact with a product channel where product fluid is cooled without adding any humidity.   An alternative embodiment for heat transfer between adjacent channels is with heat pipes.

*See* [#60-2] at 10.   Defendants argue that the "Infringement Contentions . . . provided by Plaintiff in this action fail to identify with specificity and detail where any claim element in any asserted patent is found in any accused product."   *Motion* [#57] at 2.   Plaintiff responds that "the location of each limitation of the claim is identified to the best of

–18–

[Plaintiff's] ability to do so at this early stage." *Response* [#60] at 5.   Plaintiff essentially asserts that it must have "the opportunity to physically inspect the Accused Instrumentalities, including the M-Cycle Gen3Air," before it can provide additional information. *Id.*

Although Plaintiff has attempted to comply with the requirements of D.C.COLO.LPtR 4(2), it is clear that the attempt is insufficient.   Plaintiff asserts here that Claims 1-40, as shown in Defendants' Exhibit B [#57-2], violate its patents, *see* [#57-1] at 22, but the Court cannot, based on the information provided in the Claims Chart, follow Plaintiff's logic regarding the "[i]dentification of the specific location of each limitation of the claim within each Accused Instrumentality, including for each limitation that the party contends is governed by 35 U.S.C. §112(f), the identity of the structures, acts, or materials in the Accused Instrumentality that perform the claimed function."   D.C.COLO.LPtR 4(2). This inadequacy, of course, appears to stem directly from Plaintiff not having been able to inspect the Accused Instrumentality itself, an issue which the Court addresses in Section III.D. below.[3]   Nevertheless, the Court finds that the Claims Chart is insufficient with respect to this subsection of the Local Patent Rule and must be amended.   Thus, the Court **grants** the Motion [#57] to the extent it is asserted under D.C.COLO.LPtR 4(4).

## D.    E-mailed Discovery Dispute

Finally, the Court partly addresses Plaintiff's discovery dispute e-mailed to the

---

[3]  In fact, Plaintiff   "anticipates that it may amend or supplement its [Infringement Contentions] and [Claims Chart] with additional information, pursuant to Local Patent Rule 16(a)," given that "a significant portion of relevant information is solely in the possession of Defendants," purportedly. *Response* [#60] at 5.

Court on June 21, 2022, pursuant to the undersigned's discovery dispute procedures. Having reviewed the provided materials, it appears, in short, that Defendants refuse to fully respond to Plaintiff's written discovery requests because the Infringement Contentions and Claims Chart are not specific enough to allow Defendants to understand what Plaintiff is "asserting in regard to the alleged patent infringement."   *Defs.' Counsel's May 26, 2022 Correspondence to Pl.'s Counsel*.   Plaintiff asserts, in short, that the Infringement Contentions and Claims Chart are not more specific because Defendants have not permitted Plaintiff to inspect the allegedly infringing device.   *Response* [#60] at 4, 5.

On December 5, 2021, Plaintiff propounded written discovery on Defendants, including Request for Production No. 1, which stated: "Produce or provide for inspection the M-Cycle Gen3 Air Conditioner, at a mutually agreeable time and place."   On January 20, 2022, Defendant M-Cycle Industries, Inc. responded: "Defendant objects to this request on the basis of the General Objections.   Such documents, to the extent they exist, will be produced."   On May 26, 2022, Defendant M-Cycle Industries, Inc. provided Revised Responses but chose not to amend its response to Request for Production No. 1.[4]   Defendant M-Cycle Industries LLC responded to the identical Request for Production No. 1 that it "is a dissolved LLC."

---

[4]  The Court notes that this is another instance of the often sloppy work of counsel to date in this litigation.   The Request for Production clearly seeks inspection of a device, and yet Defendant M-Cycle Industries, Inc. responded regarding *documents*, which were not part of this request.   It is especially noteworthy that, even were this a simple mistake in its original response, the problem was not corrected in the revised response to Plaintiff's discovery requests.

As best the Court can tell from the materials currently before it, an inspection of the Accused Instrumentality, i.e., the M-Cycle Gen3 Air Conditioner, would greatly advance the litigation for both parties.   Such an inspection would appear to be necessary for Plaintiff to fully prepare complete Infringement Contentions and its Claims Chart.   This would then, in turn, allow Defendants to largely respond to Plaintiff's other written discovery requests.[5]

"[I]nspections are not an extraordinary means of discovery in patent suits."   *Cuno Inc. v. Pall Corp.*, 116 F.R.D. 279, 281 (E.D.N.Y. 1987).   "Inspection is permitted, and indeed anticipated, by Rule 34(a), to be governed by the scope of Rule 26(b)." Specifically, Fed. R. Civ. P. 34(a)(1)(B) provides: "A party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: . . . any designated tangible things . . . ."   Fed. R. Civ. P. 26(b)(1) provides: ". . . Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its benefit. . . ."   The Court notes that "a showing of need has not been necessary" since Rule 34 was amended in 1970.   *Cuno*

---

[5]   The Court is aware that *all* of Defendants' objections to Plaintiff's written discovery requests are unlikely to be resolved in this way but believes that an inspection should advance the parties' conferral on such issues in a meaningful way, provided that counsel operate in good faith.

*Inc.*, 116 F.R.D. at 281 (citing Advisory Committee Note of 1970 to Rule 34 ("Rule 34 is revised to accomplish the following major changes in the existing rule: (1) to eliminate the requirement of good cause . . . .")).   Thus, "only a showing of relevance is necessary." *Cuno Inc.*, 116 F.R.D. at 281.

Here, it certainly appears that an inspection of the Accused Instrumentality is relevant to Plaintiff's patent infringement claims, and it is unclear on what basis Defendants resist inspection.   Plaintiff submitted this discovery dispute by e-mail pursuant to the undersigned's discovery dispute procedures, which bars the parties from written briefing absent leave of Court.   Thus, the parties have appropriately not yet provided argument, orally or in writing, on the issue of inspection.   Accordingly, the Court orders simultaneous written briefing on this issue as outlined below.

## IV.   Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#57] is **DENIED without prejudice in part**, **DENIED in part**, and **GRANTED in part**.   The Motion is **denied without prejudice** with respect to Fed. R. Civ. P. 12(b)(1).   The Motion is **denied** with respect to D.C.COLO.LPtR  4(3),  4(4),  and  5. [6]   The  Motion  is  **granted**  with  respect  to D.C.COLO.LPtR 4(2).   The Court will order a deadline for Plaintiff to provide an Amended Claims Chart after resolution of the inspection issue.

IT IS FURTHER **ORDERED** that  the  deadline  for  Defendants  to  file  a  motion

---

[6] Although this portion of the Motion [#57] is denied at this time, Plaintiff of course remains under an obligation to supplement and/or amend as required by Fed. R. Civ. P. 26(e) and the applicable Local Patent Rules.

pursuant to Fed. R. Civ. P. 12(b)(1) regarding the Court's jurisdiction over the foreign patents is **September 21, 2022**.

IT IS FURTHER **ORDERED** that counsel for the parties shall confer about an appropriate schedule and logistics for Plaintiff to examine the Accused Instrumentalities. If Defendants object to such inspection, **no later than September 9, 2022**, **Defendants shall file a brief of no more than five pages**, exclusive of signature block(s) and the certificate of service, explaining their objection to Plaintiff's inspection of the Accused Instrumentalities.   **Plaintiff may file a response brief of no more than five pages**, exclusive of signature blocks and the certificate of service, within **five days of the filing of Defendants' brief.**   No other briefing shall be permitted absent further leave of Court.

DATED: September 1, 2022                          BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

–23–